(118 So. 668)

**MASSEY v. YARBROUGH.   (4 Div. 371.)**

Court of Appeals of Alabama.   April 10, 1928.

Rehearing Denied June 26, 1928.   Affirmed on Mandate Oct. 30, 1928.

Wilkerson & Brunson, of Elba, for appellant.

J. M. Loflin and J. W. Hicks, both of Enterprise, and J. C. Fleming, of Elba, for appellee.

RICE, J. Appellant brings this appeal from a judgment rendered against him in a suit brought by appellee, a practicing attorney at law, claiming an amount due for personal or professional services rendered to appellant.

The facts, as we gather them from reading the record are substantially these:

Appellant was the owner of certain mortgages upon real estate situated in the state of Florida. His sister, Maggie Holley, the mortgagor, was dead, leaving minor children, and appellant had employed attorneys in Florida to foreclose his mortgages. The foreclosure proceedings appearing to drag, appellant employed appellee to go to Florida, check up on his lawyers down there, and aid and assist in and about the matter of bringing the proceedings to a conclusion, so that appellant might realize and come into the possession of the money he had invested in the mortgages, which sum approximated, and did not exceed, $23,000. Also, and as a part of appellee's employment, he was to lend his services toward the matter of getting appellant released from, or relieved of, the obligation of fulfilling the terms of a certain option to sell the lands involved, which option appellant had executed prior to appellee's employment. The specific things appellee was employed to do are stated perhaps as concisely in the power of attorney, with which he was furnished by appellant, as could be done otherwise, and we quote its provisions, as follows:

"Know all men by these presents that I, B. J. Massey of New Brockton, Coffee county, Ala., do hereby constitute and appoint J. C. Yarbrough, my true and lawful attorney, in my name and stead to do or perform any act which he may think necessary in the matter of the proceedings in the chancery court or other court in Alachua county, state of Florida, wherein B. J. Massey is complainant, the heirs of Maggie Holley are respondents, in order to bring said proceedings to a final decree therein; also to consummate the sale of the lands involved in said proceedings to any prospective purchaser thereof."

It appears that, when the lands involved were exposed to sale under the decree of foreclosure which had been rendered by the Florida court, appellee, representing appellant, was present, and that there were at least two independent men, or two groups of men, present, who were ready, willing, and able, and who proposed, to bid an amount for the lands far in excess of the amount of the decree in appellant's favor. By paying to one of these men, or groups, a sum of money, and by agreeing to resell the lands to the other at a price which represented a large excess over the amount of appellant's claim, appellee induced each of them to refrain from bidding at the sale, and was thereby enabled to buy the lands in for appellant at a nominal price, much less than the amount of the decree above referred to. Immediately thereupon appellee, as appellant's agent, entered into an agreement to sell said lands to one of the men, or groups, he had, as such agent, induced to refrain from bidding at the sale, for an amount which represented a large profit to appellant; in fact, an amount far in excess of the amount of the decree in appellant's favor.

Appellee claimed, and testified, that he had an agreement with appellant that he was to receive as fee for his services 10 per cent. of what he (appellant) got out "of this transaction." Appellant testified that his agreement with appellee was that he would pay appellee 10 per cent. of what he "had in it," to wit, $23,000. The undisputed testimony is that appellant actually paid to appellee $2,300 as fee.

It was appellee's contention that, a dispute arising between him and appellant as to the construction of the agreement as to appellee's fee, and it appearing that the way the matter was handled appellant was to get a large excess over the amount he "had in" the lands, and an excess over the amount expected to be realized by appellant, he and appellant entered into a compromise agreement that appellant should pay appellee $2,000 fee in addition to the $2,300 fee already paid him; $1,000 of this additional $2,000 fee was to be paid when the trade, i. e., the sale from appellant to the purchaser procured by appellee, was closed, and the other $1,000 in two payments of $500 each at separate later dates. In one of the counts of appellee's complaint he declared upon this agreement, claiming the $1,000 just referred to as being due and unpaid, the "trade" referred to having been closed. It was upon this count of the complaint, designated count A, that the recovery was had in the lower court.

Appellant admitted making the agreement to pay the $2,000 additional fee, but pleaded, in effect, that he was induced thereto by appellee fraudulently representing to him that the original option executed by appellant to sell the lands—the fulfillment of which option would have caused appellant a great loss—was in appellee's hands, and still binding, and that, if appellant did not agree to pay the additional fee, appellee would deliver the said option back to the original holder; further, that at the very time appellee knew, and appellant did not know, that the said option had been canceled and released by the holder thereof. Appellee replied to this plea that he informed appellant, before appellant agreed to pay the additional $2,000 fee, that this option had been abrogated, annulled, or released.

The sufficiency of none of the pleadings upon which the cause went to the jury was

tested by demurrer. No written charges were requested by, or refused to, appellant. No exception was reserved to any portion of the court's oral charge. No motion for a new trial was made. There are, indeed, none of what we regard as the major legal questions involved in the case, and there are several, presented in such a way that we may pass upon them. In fact, except in so far as he took note of them ex mero motu, and unaided by counsel, they were not so presented to the trial court.

It being conceded that a fee of 10 per cent. of the amount appellant had invested in the mortgages had been paid to appellee, his recovery in this suit must perforce rest upon his claim of the compromise agreement entered into with appellant after the mortgage foreclosure sale. Since we must assume that appellee, in keeping with the high traditions of the profession to which he belongs, would have worked, and did work, diligently about the business for which he was employed, with no aim or purpose to grade the degree of his assiduousness to, or in accordance with, the amount of fee to be received by him, and since the foreclosure proceedings had been brought to a close when the agreement for an additional compromise amount of fee was entered into, and since there was no issue involved as to the fact of appellee's employment by appellant, or the degree of diligence used by him in performing his duties, we can see no relevancy in this case of the correspondence passing between appellee and appellant's Florida attorneys. The way seems, though, to have been opened for its admission by the placing in evidence, by appellant, of testimony by said Florida attorneys that appellee never rendered any service in any way about the foreclosure proceedings. Some technical questions are perhaps raised and presented to us in a way requiring our notice, as to the propriety of the court's action in allowing the admission in evidence of carbon copies of certain letters written by appellee to these Florida lawyers, but, so far as we can observe—and appellant's able counsel leave us to our own resources—the general rule for the admission of such copies was not transgressed. 10 R. C. L. p. 1149.

Appellee was allowed to testify, over appellant's timely objection, that he (appellee) made the following statement to one Peek, the prospective purchaser procured by appellee for the lands involved, at a time when, and place where, appellant was not present, to wit:

"It embarrasses me for my client to act this way, but I want to assure you that I am here to do what I can to perform the agreement that I entered into with you. I still have the original option that Dr. Massey signed, and, if Dr. Massey doesn't sign up this contract and perform this trade, I will turn it back to you just like you gave it to me, and put you back where you were, as far as I can."

The suit resting, as above shown, upon the so-called "compromise agreement" entered into between appellant and appellee, it would appear that the statement just quoted constituted res inter alios acta, and was irrelevant and inadmissible. Though appellee was, it could be said, appellant's agent, yet it clearly appears that, in the particulars in which this conversation between him and Peek arose, he had departed from the line and scope of his agency for appellant, and was acting entirely for his own personal benefit. It is apparent that this testimony was prejudicial to appellant's rights, and for the error in its admission the judgment will be reversed, and the cause remanded. No other questions appear to be presented in a way requiring our notice.

Reversed and remanded.

PER CURIAM. Affirmed on authority of Massey v. Yarbrough, 118 So. 670.